UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DEFENDING RIGHTS & DISSENT, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, et al., <br><br> Defendants. | Civil Action No. 24-2614 (SLS) |

## JOINT STATUS REPORT

Pursuant to the Court's Minute Order dated December 10, 2025, Plaintiff Defending Rights & Dissent and Defendants Federal Bureau of Investigation ("FBI") and Department of Justice (the "Department") (collectively, "Defendants"), by and through undersigned counsel, hereby submit this Joint Status Report.  The parties report as follows:

Plaintiff brings this case under the Freedom of Information Act ("FOIA"), seeking the release of documents mentioning or referring to Wikileaks or Julian Assange.  *See generally* Compl. (ECF No. 1).  As previously reported, the FBI separated the records concerning Plaintiff's FOIA request into two categories: (1) records previously processed in response to a separate FOIA request submitted by another requester and responsive to this request; and (2) records located in response to this request that were not previously processed.  Both categories of records are responsive to all the search terms: "Julian," "Assange," "Julian Assange," and "Wikileaks."  With respect to the first category, the FBI completed production on July 16, 2025.  With respect to the second category, in June 2025, Plaintiff consented to the FBI's March 2025 proposal to conduct a *Maydak* review, which was expected to take fourteen months.  The FBI commenced the *Maydak* review in September 2025 and expected to complete that review by November 2026.

On December 9, 2025, the parties appeared for a status conference.  The next day, the Court ordered the parties to file a joint status report by January 12, 2026 which: "(1) detail[s] the number of pages that remain to be processed responsive to the search term 'Wikileaks' as opposed to 'Julian,' 'Assange,' or 'Julian Assange'; (2) confirm[s] that the Defendants' review and disclosure of documents is ongoing; and (3) include[s] a brief statement from each Party, not to exceed five pages each, summarizing their position with respect to the application of 5 U.S.C. § 552(b)(6) and 552(b)(7)(C)." *See* Minute Order dated December 10, 2025.  The Court also ordered the parties to meet and confer, which they did on December 18, 2025, for 8 minutes and 5 seconds, via Microsoft Teams videoconferencing, which was attended by undersigned counsel for Plaintiff, Merrick Wayne, and Defendants' former counsel, Stephanie Johnson.  The undersigned counsel for each party also conferred via telephone for 8 minutes on January 12, 2026. Each issue is addressed below.

*First*, the FBI reports that the terms "Assange" and "Wikileaks" are intermingled throughout the universe of potentially responsive records such that it is not possible to determine the page count that would be related to one of the search terms and not the other.  Defendants provided this information at the December 18, 2025, meet and confer.

*Second*, the FBI reports that its Record/Information Dissemination Section ("RIDS") personnel commenced the *Maydak* review in September 2025.  Due to the lapse in appropriations, however, RIDS personnel were unable to conduct further review until funding was restored.  The *Maydak* review continues as of the date of this joint status report. However, there has not been any ongoing production of records during the *Maydak* review because no segregable, non-exempt information has been identified, and Plaintiff removed any public source material from its request. At the December 18, 2025, meet and confer, Defendants informed Plaintiff that they had not been

sending out monthly interim response letters to Plaintiff about what has been reviewed because Defendants have not determined to release any of the reviewed records so far.  Plaintiff has requested that Defendants provide monthly interim letters confirming that records have been reviewed as part of the *Maydak* review.

*Third*, with respect to Exemptions 6 and 7(C), the parties provide position statements as ordered by the Court:

**<u>Defendants' Position:</u>**

Defendants report that, after continuing the *Maydak* review and gaining greater familiarity with the records, they have concluded that material pertaining solely to "WikiLeaks" can be segregated.  Defendants have conferred with Plaintiff, through counsel, and offered to forego continued *Maydak* review in lieu of conducting a segregability analysis pertaining only to "Wikileaks."  Plaintiff has accepted that proposal with the understanding that Defendants will (1) process 250 pages per month,[1] (2) send Plaintiff monthly status updates and interim releases to the extent segregable, non-exempt information is located, and (3) when applicable, continue to protect third-party information for privacy reasons (particularly with respect to Julian Assange).  Due to the large volume of responsive records, the FBI will simultaneously continue reviewing the responsive records to provide Plaintiff more context in which to further narrow its request after the main file volumes are processed.

As to the privacy interests for any third parties referenced in the records at issue, Defendants report that Plaintiff has not provided any privacy waivers for those third parties. Although Plaintiff asserts a public interest in information concerning Julian Assange, the FBI has

---

[1]     Plaintiff reserves the right to seek a faster processing rate after Defendants have conducted the segregability analysis and have a total page count for Wikileaks.

determined that, while Assange's privacy interests may be diminished due to his public profile, those interests are not extinguished.  Assange retains a cognizable privacy interest in the personal and investigative details contained in the records, and the asserted public interest does not outweigh that interest. As a result, the FBI will continue to either redact the records or withhold certain records to protect Assange's privacy interests where segregation is not reasonably possible.

**Plaintiff's Position:**

Regarding WikiLeaks, Defendants made the above proposal to conduct a segregability analysis when the parties conferred on January 12, 2026.  While Plaintiff's counsel addressed the applicability of Exemptions 6 and 7(C) at the December 9, 2025 status conference, it is Plaintiff's understanding that Defendants are no longer asserting either exemption for WikiLeaks.  Regarding Assange, Plaintiff provides the following statement about the applicability of the privacy exemptions:

Plaintiff seeks the FBI's records that reference Julian Assange or WikiLeaks.  In 2010 and 2011, Assange, an Australian citizen and journalist, published leaked classified U.S. Military information on his website WikiLeaks.  Following the publication of the leaked materials, the U.S. government launched a high-profile investigation into Assange and WikiLeaks, charged Assange under the Espionage Act, and pursued Assange across the globe in its efforts to prosecute him, including through extradition by the United Kingdom.  On June 25, 2024, Assange accepted a plea deal and pleaded guilty to a felony charge of "conspiracy to obtain documents, writings, and notes connected with the national defense, and willfully communicate documents relating the national defense, from a person having both lawful and unauthorized possession of the same, in violation of 18 U.S.§ 793(g)." *Assange v. United States*, Criminal Case No. CR-24-00014, ECF No. 2 (D.N. Mar. Is.).  The plea agreement includes a factual basis and statement of facts detailing Assange's

conduct and the government's investigation.  *Id.* at 5-10.  As part of the plea agreement, Assange also waived all rights to request or receive "any records pertaining to the United States Department of Justice's criminal investigation, extradition, and/or prosecution of" Assange.  *Id.* at 19.

Defendants seek to assert FOIA Exemptions 6 and 7(C) categorically across all of the records.[2]  Permitting Defendants to do so through bifurcated briefing will only waste time and incur significant resources on an issue that Defendants will not be able to succeed on across every single responsive page because Assange has a weak interest in his privacy rights triggering a balancing between his weak interest in privacy and the public's interest in disclosure, which will favor the public for at least some of the records.  If Plaintiff is successful on bifurcated briefing, Defendants will still have to conduct a *Maydak* review, which is what Defendants are currently doing.

In order to establish the privacy exemptions for Assange, Defendants must show that the records implicate a "substantial privacy interest."  *Roth v. DOJ*, 642 F.3d 1161, 1174 (D.C. Cir. 2011).  Defendants must also show when asserting any exemption, except Exemption 3, that disclosure would "caus[e] reasonably foreseeable harm to an interest that the exemption protects." *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024).  The agency bears the burden to withhold information under FOIA; to meet that burden, it must provide "reasonable specificity of detail rather than merely conclusory statements." *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 713 (D.C. Cir. 2025).

The D.C. Circuit has held that individuals who have been convicted have a weaker privacy interest than those who were acquitted, had their case dismissed, or were never charged.  *Am. C.L.*

---

[2]    Exemptions 6 and 7(C) are the privacy exemptions, with Exemption 7(C) specifically applying to records compiled for law enforcement purposes, such as the records Plaintiff seeks in this case.

*Union v. U.S. Dep't of Just.*, 655 F.3d 1, 7 (D.C. Cir. 2011).  The D.C. Circuit further explained that disclosure of a criminal conviction "may be embarrassing and stigmatizing, and may endanger one's prospects for successful reintegration into the community."  Neither of these considerations are applicable to Assange, who is an internationally known figure.

Following the plea deal, Assange has spoken publicly, including before the Parliamentary Assembly of the Council of Europe, about his experience being investigated and prosecuted by the United States government.  Roy Schestowitz, *Full Transcript of Julian Assange's Speech in Strasbourg*, Techrights, Oct. 1, 2024, https://techrights.org/n/2024/10/01/Full_Transcript_of_Julian_Assange_s_Speech_in_Strasbourg.shtml ("the gravity of this occasion and the weight of the issues at hand compel me to set aside my reservations and speak to you directly…. I eventually chose freedom over unrealisable justice, after being detained for years and facing a 175 year sentence with no effective remedy. Justice for me is now precluded, as the US government insisted in writing into its plea agreement that I cannot file a case at the European Court of Human Rights or even a Freedom of Information Act request over what it did to me as a result of its extradition request.  I want to be totally clear. I am not free today because the system worked. I am free today because after years of incarceration because I plead guilty to journalism. I plead guilty to seeking information from a source. I plead guilty to obtaining information from a source. And I plead guilty to informing the public what that information was. I did not plead guilty to anything else. I hope my testimony today can serve to highlight the weaknesses of the existing safeguards and to help those whose cases are less visible but who are equally vulnerable.").  Similarly, Assange's wife publicly expressed Assange's gratitude to his worldwide supporters and encouraged people to make FOIA requests about Assange.  Karen Middleton, *Stella Assange urges journalists to FOI the US government to get case details*, The Guardian, June 26, 2024,

https://www.theguardian.com/australia-news/article/2024/jun/27/julian-assange-wife-stella-foi-act-case-prison-release-plea-deal ("Julian isn't allowed to request freedom of information, make information requests [to] the US government," Stella Assange said. "But you can and I encourage you to … so please do."). None of these statements would be made by a person who is embarrassed or stigmatized by their conviction or by someone who wants to just put their conviction behind them and reintegrate into their community. Rather, Assange has publicly talked about his experiences to protect journalists in the future. Further, both he and his wife have made it a point that Assange cannot submit a FOIA request to Defendants for their records pertaining to himself. Thus, the only way to make these records public is for other requesters, such as Plaintiff Defending Rights & Dissent, to submit a FOIA request for records about Assange, and there is no requirement that a requester must provide a privacy waiver to overcome the privacy exemptions. To the extent that Assange maintains an interest in his personal privacy surrounding a conviction he has spoken frequently spoken about publicly, then that is a weak and *de minimis* interest, which is easily overcome by the public interest in disclosure.

As explained, Assange's publication of the leaked materials on WikiLeaks and the United States government's efforts to investigate, extradite, and prosecute Assange have been publicly known and reported on throughout the world since 2010. Assange's case is notable because he is the first journalist to be convicted under the Espionage Act. *Julian Assange*, Freedom of the Press Foundation, last visited Jan. 12, 2026, https://freedom.press/issues/julian-assange. The government's prosecution of Assange is a key contributor to the erosion of the freedom of the press, and most major civil liberties and human rights organizations in the United States denounced the criminal case against Assange for this very reason. Chris Savage, *Civil-Liberties Groups Ask Biden Justice Dept. to Drop Julian Assange Case*, The New York Times, Feb. 19, 2021,

https://www.nytimes.com/2021/02/08/us/politics/julian-assange-indictment.html.  The public has an immense interest in these records, and that overcomes Assange's weak and *de minimis* interest in personal privacy surrounding his conviction.

Finally, even if the Court balances the public's and Assange's interests and still holds that Assange's interests in privacy are greater, Defendants will be unable to show foreseeable harm. As explained above, Assange has spoken publicly about his experiences and has encouraged others to seek records from Defendants because he lacks the ability to do so himself.  Thus, there is no foreseeable harm to Assange's personal privacy through the disclosure of the requested records.

*    *    *

The parties respectfully request that they be permitted to file a further status report on February 6, 2026.

Dated: January 12, 2026
        Washington, D.C.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

/s/ Merrick Wayne
Matt Topic, D.C. Bar No. IL0037
Stephen Stich Match, D.C. Bar No. MA0044
Merrick Wayne, D.C. Bar No. IL0058
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
312-243-5900
fioa@loevy.com

By:    /s/ Benjamin H. Zieman
       Benjamin H. Zieman
       Assistant United States Attorney
       601 D Street N.W.
       Washington, D.C. 20530
       202-252-2540

*Attorneys for the United States of America*

*Attorneys for Plaintiff*