UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| DEFENDING RIGHTS AND DISSENT, | ) | |
| Plaintiff, | ) | Civil Action |
| vs. | ) | No. 24-2614 |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | December 9, 2025 |
| et al. | ) | 2:02 p.m. |
| Defendants. | ) | Washington, D.C. |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**TRANSCRIPT OF STATUS CONFERENCE**
**BEFORE THE HONORABLE SPARKLE L. SOOKNANAN**
**UNITED STATES DISTRICT COURT JUDGE**

**APPEARANCES**:

FOR THE PLAINTIFF:
        MERRICK JASON WAYNE
        Loevy & Loevy
        311 N. Aberdeen Street
        Third Floor
        Chicago, IL 60607
        (312) 243-5900
        merrick@loevy.com


FOR THE DEFENDANTS:
        STEPHANIE R. JOHNSON
        DOJ-USAO
        601 D Street, NW
        Washington, DC 20530
        (202) 252-7874
        stephanie.johnson5@usdoj.gov

Court Reporter: Elizabeth Davila, RPR, FCRR
               Official Court Reporter

*__This transcript is work product__. 
This transcript shall be 
considered null and void if the transcript is edited, printed, 
disassembled, screenshot, and/or copied in any manner by any 
party without authorization of the signatory.*

**Proceedings reported by machine shorthand.**
**Transcript produced by computer-aided transcription.**

**P R O C E E D I N G S**

THE COURTROOM DEPUTY:  Good afternoon, Your Honor. We are on the record for Civil Case 24-2614, Defending Rights and Dissent versus the Federal Bureau of Investigation, et al.

Starting with the plaintiff, please approach and identify yourself for the record.

MR. WAYNE:  Good morning, Your Honor. Merrick Wayne, M-E-R-R-I-C-K, W-A-Y-N-E, for the plaintiff, Defending Rights and Dissent.

THE COURT:  Good morning.  Sorry.  Good afternoon.

MS. JOHNSON:  Good afternoon, Your Honor. Stephanie Johnson with the United States Attorney's Office on behalf of the government.

THE COURT:  Good afternoon.

Okay.  So since we were last together, we now have, from your last JSR, that the current page count is 138,000 pages, which includes most of the attachments but not all of them; and that the FBI's conducting this *Maydak* review that the plaintiff elected to pursue.

Ms. Johnson, can I just ask you a couple of questions about this *Maydak* review and what happens from here?

MS. JOHNSON:  Yes.  I will try my best to answer your questions.

THE COURT:  So I read the last report that went into detail about this review.  I am still not sure I understand the difference between the options that were presented to the plaintiff and how this saves any time.

What happens at the conclusion of this *Maydak* review?

MS. JOHNSON:  So depending on what documents are released, plaintiff would either challenge --

THE COURT:  Okay.  Hang on, sorry.

So the FBI does this review on a monthly basis.  And on November -- whenever this is done, in November 2026, at that point the FBI turns over all of the documents on that date?

MS. JOHNSON:  No.  Only the information -- from my understanding, only the information that would be in the public domain or that could be released because it's not exempt under a FOIA exemption.

THE COURT:  Right.  So they do the *Maydak* review, they determine which exemptions apply.  In November 2026, in bulk, the FBI is just going to turn over any nonexempt records?

MS. JOHNSON:  That's my understanding.  Well, I think they are going to do it -- based off of my conversation with agency counsel, if any records can be released -- they are doing monthly reviews.  But if any

records can be released, I am thinking that they would release those records on a monthly basis.

THE COURT:  So why does a *Maydak* review save any time?  I don't understand the difference between the *Maydak* review and the other option that was presented to the plaintiff.

MS. JOHNSON:  So I don't think it saves any time.

THE COURT:  What's the difference between the options then?

MS. JOHNSON:  The bifurcated would be:  We would brief the Exemption 6 and 7(c) if the Court and, also, the plaintiff agrees that the agency wouldn't waive other applicable exemptions, and that's the bifurcated process.

The *Maydak* review would be actually reviewing all of the documents and applying all applicable exemptions.

THE COURT:  But the bifurcated review process, as it's explained in the last JSR, explains that the analyst is still reviewing each record on a document-by-document basis.

MS. JOHNSON:  Right.  And that's to determine whether or not if any of the documents are in the public domain and to do the public interest versus the private interest analysis.

THE COURT:  But if someone is looking at all the documents, aren't they also determining whether any exemptions apply?

MS. JOHNSON:  I don't believe so, no.  They wouldn't be doing -- the *Maydak* review would be, actually -- for example, some of the records would be withheld under Exemption 1, so that's a separate process; that would be a classification process that the agency would have to do.

So from -- my understanding is that if they do the bifurcated process, everything would be categorically denied under Exemption 6 and 7(c), so they wouldn't be applying the other exemptions that could potentially be applicable to the document, such as Exemption 1.

THE COURT:  But if someone is looking at every document, document by document, why wouldn't they just determine everything that applies?

I just don't understand.  Why would someone go through all of that just to figure out one exemption?

MS. JOHNSON:  I think it takes time to actually apply the other exemptions and then also complete the review that's necessary for the other exemptions.

So if they're looking, for example, at one document and they can categorically deny the document under Exemption 6, they wouldn't have to do a line-by-line review to apply the other applicable exemptions.

THE COURT:  So the agency would have a FOIA analyst look at one document, apply Exemption 6 and move on, and then you would come brief Exemption 6 to me.  If I agree

with you, we're done.  If I disagree, then you have got to go back and have that same FOIA analyst look at the same document to determine if a different exemption applies?

MS. JOHNSON:  Correct, that would be the *Maydak* review.  Say, for example, if the document has an Exemption 1, my understanding is that it would involve multiple reviews rather than just one analyst reviewing it for Exemption 6.

THE COURT:  Are there different people involved in a review for Exemption 6 versus 7, for example?

MS. JOHNSON:  I would have to follow-up with the agency, but I would believe so.  Based off of -- my understanding is that Exemption 1, for example, would require different levels of review than Exemption 6 or 7(c).

THE COURT:  So what you are doing now, the FOIA analyst is looking at a document and then pulling in other people who have to make determinations about the different exemptions?

MS. JOHNSON:  Depending on the exemption, yes.

If I just may -- so for the bifurcated process, the FBI actually provided additional information that might be helpful to the Court.

So the bifurcated process -- I think we mentioned this in our status report; it would require a review of each record, document by document, identifying that type of

record; for example, if it's an email or electronic communication or interview; and then the documents are grouped into different categories.  And then after they're grouped into the different categories, then the FBI will determine whether or not if there is a privacy interest and if -- if not, then they would potentially disclose that information.

So I guess the process that the agency has to take with reviewing the documents for a bifurcated process would be less than what they would have to do for the *Maydak* review.

THE COURT:  Okay.  I am not sure I understand why the FBI would just do a bifurcated process then, because spending government time to do a review as to one exemption and then brief that and then, potentially, have to go back and have the same person look at the same document again seems like an inefficient use of government time.

MS. JOHNSON:  I think it would depend on whether or not the Court ruled in our favor.

So if we did the Exemption 6, 7(c) and the Court determined that the records were properly categorically denied, then we wouldn't have to apply the other exemptions. But if the Court doesn't rule in our favor then the agency wouldn't want to waive those exemptions and would want to go back and review and complete the process.

THE COURT:  I understand why the agency wouldn't want to waive those.

What is the nature of Exemption 6 that you think might categorically apply to these documents?

MS. JOHNSON:  My understanding is that the documents apply to a third-party individual, and that's why Exemption 6, 7(c) apply.

THE COURT:  So all 138,000 pages apply to an individual such as Exemption 6 --

MS. JOHNSON:  Correct.  Yes, that's my understanding.

THE COURT:  But someone still has to go look at all 138,000 pages to apply Exemption 6?

MS. JOHNSON:  So they would look at it document by document instead of page by page, line by line.

THE COURT:  Page by page, okay.  How long would it take for that review, the bifurcated review process?

MS. JOHNSON:  So the agency said that they would need at least 90 days.

THE COURT:  How many documents are we talking about?

MS. JOHNSON:  I only have the page count, but I can ask agency counsel if he can provide a count for the documents.

THE COURT:  Okay.  Let me hear from the plaintiff

about what its argument is under Exemption 6 because -- I mean, if there is an Exemption 6 argument that you think resolves this case that everyone knows about now, then -- understanding that the plaintiff wants a *Maydak* review -- I want to think about whether it makes sense to have you guys brief that.

MS. JOHNSON:  If I may, before I sit down, Your Honor.

THE COURT:  Yes.

MS. JOHNSON:  I think I just want to emphasize, if the Court does require us to move forward with the briefing on Exemption 6, 7(c), we would just want to make sure that the agency -- if the Court denies summary judgment, that the agency wouldn't waive any further exemptions --

THE COURT:  Totally understood.  I agree that that would be fair.

MS. JOHNSON:  Okay.  Thank you.

THE COURT:  All right.  Mr. Wayne, why do you think Exemption 6 does not apply to these documents?

MR. WAYNE:  So, Your Honor, I just want to clarify what these records are that we're talking about.

As was -- as the FBI has finally clarified, this universe of records hits on the search for Julian Assange and WikiLeaks.  When we're talking about a (b)(6) argument for a third party like Mr. Assange, I understand the legal

framework that the government is making, we understand that we will dispute that in briefing.  However, there is no privacy exemption for WikiLeaks because it's an organization.  So if we did a bifurcated review process, it would be a very simple:  Grant a summary judgment in our favor on the WikiLeaks, and they are just going to have to do the *Maydak* review anyway.  So from our perspective, the bifurcated review doesn't actually save time, it only prolongs it by adding in more briefing.

THE COURT:  Well, what's your argument as to the Julian Assange search; and how does this document count break down?

MR. WAYNE:  Sure.  So for privacy -- so we don't know the breakdown.  We have asked for page counts, we have not been provided with those page counts.

THE COURT:  So we don't know how many of the 138,000 hit on WikiLeaks versus Julian Assange?

MR. WAYNE:  That is correct.  The FBI has not told us that, even though we have asked for page counts.

As far as our argument for Julian Assange, Mr. Assange took a plea deal.  He has been convicted.  Many of this information is in the public domain.  We think that there is an immense public interest in the prosecution, investigation into Mr. Assange and WikiLeaks, such that -- the fact that these exemptions are a balancing test.  We

think that the Court, when balancing the private and public interest, will come out in plaintiff's favor, at least with respect to some of these documents. Obviously, we have an information disadvantage because can't see them like the FBI can.

THE COURT: Let me ask Ms. Johnson about the page breakdown.

MS. JOHNSON: So, in terms of the page breakdown, plaintiff has requested the page breakdown. But we mentioned in one of the status reports that if the FBI has to go through each page -- plaintiff provided a few examples of categories of records that they were interested in. The FBI said if they have to go through each page and identify which record pertains to which category that plaintiff provided then it wouldn't be in the best use of the FBI's time because it would just take time from processing or doing the *Maydak* review.

Also, plaintiff recently provided a few categories of records that they are interested in, and the FBI today mentioned that they would be able to provide a page count for some of the type of documents that plaintiff requested.

THE COURT: Okay. But to pull these records, presumably, the FBI searched for WikiLeaks and Julian Assange. Why would they need to review each document to tell me how the page count breaks down? Shouldn't they be

able to tell me that just from their search?

MS. JOHNSON:  They might be able to.  If I am remembering correctly, I don't remember plaintiff specifically asking for a page count for each term that the FBI used.

THE COURT:  Okay.  I would like to see that.  I assume it would be helpful to the plaintiff as they think about ways to narrow this to get the breakdown of the search terms that were used so we have a sense of how many of these records hit on WikiLeaks versus Julian Assange.

MS. JOHNSON:  I can definitely ask the agency if that is something that they're able to provide, a page count for each term that was used; and if not, provide an explanation as to why not.

THE COURT:  Okay.  So I am going to ask you both to file a JSR in 30 days.  I want to get the page counts. And I am going to ask you both to give me a summary of your Exemption 6 arguments in a couple of pages, no more than five pages each, so that I have a sense of whether it makes sense to break off the Exemption 6 legal issue, and ask you to brief it and decide that.

MS. JOHNSON:  Yes, Your Honor.

THE COURT:  Do you have any questions about how we are going to proceed, Mr. Wayne?

MR. WAYNE:  I have no question about the JSR.  I

did just want to note something about the FBI's processing of records, if I may.

THE COURT:  Okay.  I will give you a chance in a minute.

The *Maydak* review is ongoing.

Ms. Johnson, it sounds like any nonexempt records are being turned over on a monthly basis?  Or is it your explanation that because the FBI thinks that there are broad exemptions that there are going to be no such records that get turned over?

MS. JOHNSON:  Could I provide that information in the status report?  I just want to confirm that information with the agency counsel.

THE COURT:  Okay.  Go ahead.

MS. JOHNSON:  Thank you.

THE COURT:  Mr. Wayne.

MR. WAYNE:  Thank you, Your Honor.

It is my understanding, from speaking with counsel prior to today, that the FBI is not currently processing anything and they're waiting for these narrowing discussions to be done.

Originally, the FBI told us March 2026.

THE COURT:  Wait.  Hang on.  This report says the FBI is currently conducting the *Maydak* review.

MR. WAYNE:  Your Honor, it's my understanding that

they're not reviewing the pages; they are not doing a page-by-page review currently.  We're not getting monthly releases.  We did -- prior to going with this *Maydak* route, we did get releases of information that had been disclosed previously.  But --

THE COURT:  You mean from prior FOIA litigation?

MR. WAYNE:  Yes, correct.  However, we're not currently getting monthly releases.  It does appear that the FBI is pushing out this timeline; first it was March 2026, now it's November 2026.

Plaintiff has done immense research into the FBI's records and categories.  We have asked for page counts, we were rebuffed.  We tried our own narrowing.  We were rebuffed in saying that the FBI doesn't understand what these records are, and we had to point to where it is in their own records manual how these are defined.

We are trying our best efforts to narrow this in a way that is satisfactory to the Court, but it appears that the FBI is just delaying the inevitable release of these records.

THE COURT:  Ms. Johnson, this report says the FBI is currently doing a *Maydak* review.  Is the FBI doing anything?

MS. JOHNSON:  That is correct.  The FBI is doing a *Maydak* review.  When plaintiff's counsel and I conferred, I

said, basically, the March 2026 deadline -- that was before we appeared in front of Your Honor and you requested that we narrow. At that time, the agency was not doing the *Maydak* review because we were discussing narrowing. Based off of the last status report, we did mention that the *Maydak* review was in progress and that it would be completed in November of 2026.

When plaintiff's counsel and I spoke, I told him I would need to confirm that information. And I did, as of today, confirm that information, that the *Maydak* review is currently in progress and that they still anticipate completing the review in November 2026.

THE COURT: Okay. When did they start the *Maydak* review?

MS. JOHNSON: I would have to ask them for the precise date. But if we mentioned it in our status report, then that's when they started it, after the last narrowing.

THE COURT: You mean the status report you just most recently filed? How many documents have they already reviewed of the 138,000?

MS. JOHNSON: I would have to ask them; I don't have the exact number. I can ask the FBI.

THE COURT: Okay. When I schedule a status conference, I expect you're both going to come to me with current information and the most basic of it is: How many

documents have been reviewed, how many remain to be reviewed, what is the timeline?

My goal is to move these cases along as quickly as possible and get them done. I have many, many FOIA cases on my docket where either the plaintiff or the defendant, or a combination of the two, seem satisfied to just let these cases sit around forever; and that's not how I intend to manage these cases.

If I schedule something and I am going to spend my time with all of you to figure out what is going on, I expect you are going to come to me with information about what is going on.

So something as basic as:  When did the *Maydak* review start, how many documents have been reviewed, how many documents remain to be reviewed? -- should be information that the government has if you are going to appear in a status conference in this case.

MS. JOHNSON:  I understand, Your Honor.

THE COURT:  Okay.  Any questions about how we're going to proceed?

MS. JOHNSON:  Not from the government.

THE COURT:  Mr. Wayne?

MR. WAYNE:  No, Your Honor.

THE COURT:  Okay.  I will look out for your status report.  And just so that there is no confusion, my

understanding and expectation is that this review is ongoing and that, on a monthly basis, records or an update should be produced to the plaintiff notwithstanding the discussions we are having about whether there are ways to further narrow what's happening or whether I am going to ask you to brief certain issues while that review is ongoing.  Okay?

Thank you, both.  I think you are both on the next case, but I will have my courtroom deputy call it.

(Whereupon, the proceeding concludes 2:23 p.m.)

**CERTIFICATE**

I, ELIZABETH DAVILA, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

This certificate shall be considered null and void if the transcript is disassembled and/or photocopied in any manner by any party without authorization of the signatory below.

Dated this 6th day of January, 2026.

/s/ Elizabeth Davila, RPR, FCRR
Official Court Reporter