UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEFENDING RIGHTS AND DISSENT,

        Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, et al.,

        Defendants.

Civil Action No. 24-cv-2614 (SLS)

## DECLARATION OF SHANNON R. HAMMER

I, Shannon R. Hammer, declare as follows:

1. I am currently an Assistant Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division, Federal Bureau of Investigation (FBI), located in Winchester, Virginia, and in the absence of the RIDS Section Chief, I serve as Acting Section Chief for RIDS. I have held this position since January 2024. I joined the FBI in October 2006, and prior to becoming the Assistant Section Chief of RIDS, I held the positions of Acting Assistant Section Chief of RIDS; Unit Chief of the National Security and Classification Operations Unit; Unit Chief of a Freedom of Information/Privacy Act (FOIPA) Operations Unit; and a supervisor in the Initial Processing Operations Unit. In those capacities, I had management oversight for the RIDS national security review program; enterprise declassification review compliance pursuant to Executive Order 13526, and classification reviews for civil and criminal discovery matters; and I oversaw the front-end operations of the FBI's FOIPA program.

2. In my official capacity as Acting Section Chief of RIDS, I supervise eight Federal

1

Bureau of Investigation Headquarters units and two field operational service center units. RIDS' collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974, 5 U.S.C. § 552a; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, including information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.      Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA and the Privacy Act of 1974. Specifically, I am familiar with the FBI's handling of Plaintiff's FOIA request that is the subject of this litigation.

4.      The FBI submits this declaration in support of the FBI's proposed processing rate of 250 pages per month. Part I of this declaration provides a description of the FBI's FOIPA program background, Part II provides context concerning the FBI's FOIPA workload, and Part III describes the FBI's interim release policy.

**PART I: FBI'S FOIPA PROGRAM BACKGROUND: ORGANIZATIONAL STRUCTURE AND OPERATING ENVIRONMENT**

5.      To best put in context the time and effort dedicated to process an FBI FOIPA request, an overview of the organization and operating environment of the FBI's FOIPA program follows.

***RIDS Organizational Structure and Operating Environment***

6.      The FBI currently employs 212 Government Information Specialists (GIS), with support from 91 contractors to process requests for FBI information under the FOIA and Privacy Acts and conduct classification and declassification reviews, *inter alia.* RIDS staff are assigned to the following units:

(a) RIDS Front Office, which oversees personnel and other administrative functions, directs process improvement to include training and protocol management, and handles various special projects;

(b) the FOIPA Support Unit, which serves as RIDS's Public Information Office and provides administrative assistance and support to the other RIDS units;

(c) the Initial Processing Operations Unit (IPOU), which receives and opens new FOIPA requests, initiates searches for records responsive to FOIPA requests, makes responsiveness determinations, and ensures that responsive material is scanned and imported into FOIPA Document Processing System;[1]

(d) FOIPA Operations Units, which process records responsive to FOIPA requests by applying exemptions and preparing them for public dissemination.

(e) the National Security Classification Operations Unit (NSCOU), which provides expert guidance and direction regarding FOIPA requests pertaining to national security matters and develops and manages responses to requests for access to sensitive national security information in FBI records. NSCOU also reviews and makes national security classification determinations pursuant to Executive Order 13526 in response to a variety of requests, and also conducts mandatory and systematic declassification reviews; and

(f) the Litigation Support Unit, which assists the FBI Office of the General Counsel's FOIPA Litigation Unit in handling all FOIPA lawsuits against the FBI or involving FBI records and information by reviewing, researching, and justifying the FBI's response to FOIPA requests, and preparing detailed declarations to support motions for summary judgment.

7.      Perfected FOIPA requests are typically worked by at least two units and require

---

[1] Some FOIPA Operations Units are "single station" units and perform the intake and initial processing work (e.g., searches) instead of IPOU, as well as processing for FOIA exemptions.

3

action by multiple employees during their lifecycle.[2] Requests generally start in IPOU; those that include classified information are reviewed by NSCOU; once NSCOU has completed their reviews, the requests move to a FOIPA Operations Unit for processing; and if a request is in litigation, the Litigation Support Unit is also involved throughout the process.[3]

**PART II: THE FBI'S FOIPA WORKLOAD**

8.      Operationally, the FBI has one of the largest and most complex FOIPA programs in the federal government, reviewing approximately 1.3 million pages annually for dissemination to the public. Despite this review statistic, the FBI's FOIPA program cannot keep pace with the increasing public demand for FBI records accompanied by more FOIPA litigations for these records. Moreover, on October 20, 2023, the Deputy Attorney General sent a memorandum to several DOJ components, including the FBI, requiring each component to reduce its FOIA backlog to September 2018 levels by December 15, 2025. Given this mandate, and the continued growth in the volume and complexity of FOIPA requests and litigations received by the FBI over the last six years, the FBI reevaluated its business practices, to include its long-standing interim release policy (IRP) of 500 pages per month with the program goal of reducing the size of its FOIA backlog while maximizing the release of information to the most requesters.

---

[2] A perfected FOIPA request is a written request for federal records that meets all agency requirements. A perfected FOIPA request triggers the statutory time limits for an agency to respond. The key components of a perfected FOIPA request include the following: receipt of the request by the correct FOIA office, inclusion of required details such as requester name and contact information, a reasonable description of the requested federal records that will allow agency staff to locate the requested records with a reasonable amount of effort, and an agreement to pay fees, request for fee waiver, or other resolution of fee issues.

[3] This only addresses RIDS' processes. As part of the FBI's FOIA process, subject matter experts and other stakeholders within the FBI are consulted prior to release of records, and if other government agencies' records or equities are implicated, the FBI consults with those agencies and/or refers records to them for processing prior to any final decisions about release or withholding under the FOIA.

*Sustained Overall Growth in the Volume of Incoming FOIPA Requests*

9.    The FBI FOIPA program has experienced overall sustained growth in the volume of incoming FOIPA requests and litigation cases from fiscal year (FY) 2021 to present. Notably, in FY 2026, with over three months remaining, the FBI has received its highest number of requests ever—55,253 FOIPA requests. When compared to the 29,829 FOIPA requests received in FY 2021, this represents an 85.2 % increase in requests from FY 2021. This sustained growth solidifies the high public demand for access to FBI records.

| Fiscal Year | FOIPA Requests Received | Percent Change from Prior FY | 6 Year Growth Rate FY 2021- FY 2026 |
|---|---|---|---|
| FY 2021 | 29,829 | 1.6 % increase | |
| FY 2022 | 43,363 | 45.4 % increase | |
| FY 2023 | 40,425 | 6.8 % decrease | 85.2 % |
| FY 2024 | 32,167 | 20.4 % decrease | |
| FY 2025 | 36,218 | 12.6 % increase | |
| FY 2026 | 55,253 (through 6/18/2026) | 52.6 % increase | |

10.    The FBI has also experienced 33.5% growth in the volume of FOIPA litigation cases over the last six years.

| Fiscal Year | Number of Pending FOIPA Civil Action Cases | 6 Year Growth Rate FY 2021-FY 2026 |
|---|---|---|
| FY 2021 | 388 | |
| FY 2022 | 402 | |
| FY 2023 | 474 | 33.5 % |
| FY 2024 | 484 | |
| FY 2025 | 488 | |
| FY 2026 (incomplete) | 518 (through 6/18/2026) | |

11.    FOIPA requests in litigation for FY 2026 now consume nearly 54% of all monthly production to the public, significantly impacting the FBI's ability to equitably and timely respond to all requesters. In other words, 54% of the over 800,000 pages processed as of May 31, 2026, for FY 2026 (approximately 104,414 pages per month) was committed to fulfill

4.5 % of the overall requests, those in litigation. At the time of this calculation, four months remained in FY 2026; therefore, this number and resulting percentage will further increase.

| Approximate Total Pages Reviewed in Response to FOIPA Requests in FY 2026[4] | Approximate Number of Pages Processed in Response to Litigated Requests | Approximate Number of Pages Processed in Response to Non-Litigated Requests |
| --- | --- | --- |
| 835,311 | 450,956 (54%) | 384,355 (46%) |

12.     As a result, the backlog, or amount of unaddressed work, exceeded 11,000 pending requests at the end of FY 2025. As of June 2026, the number of pending requests continues to exceed 11,000. Consistent with the growth trends noted above, the number of total pending requests has also steadily increased by approximately 19% since FY 2018 when the FBI had 9,316 pending requests.

13.     Despite the steady increase in workload, however, funded staffing levels have decreased since FY 2021 with a 9.3 % decrease over the last six Fiscal Years.  As of June 2026, the FBI's FOIPA staff included 212 FBI professional staff and 91 contractors. Meanwhile, the FBI has received the highest number of FOIPA requests ever in FY 2026. The FBI has already received approximately 55,253 FOIPA requests with several months remaining in this FY. The FBI submitted budget enhancement requests to supplement FOIPA staffing in FYs 2024, 2025, and 2026 to address its FOIPA staffing gap; however, none of the enhancement requests have been funded.

---

[4] These statistics do not include the voluminous amount of media reviewed in response to FOIPA requests. In fact, 15 minutes of audio media processing is the equivalent to processing 250 pages of material and 7.5 minutes of video media is the equivalent to processing 250 pages of material, due to the level of FOIPA resources used in media processing.

| Fiscal Year | FBI Professional Staff | Contractors | Total | Percent Change Over 5 Years |
|---|---|---|---|---|
| 2021 | 239 | 95 | 334 | |
| 2022 | 240 | 89 | 329 | |
| 2023 | 241 | 100 | 341 | 9.3% Decrease |
| 2024 | 241 | 104 | 345 | |
| 2025 | 234 | 92 | 326 | |
| 2026 | 212 | 91 | 303 | |

14.     Simply put, the imbalance of time and resources serving requesters who litigate versus non-litigant requesters is not sustainable. Requesters assigned to the FBI's multi-track processing queues awaiting processing of their requests in "First-in-First-Out" (FIFO) order, must wait longer as the relative few requesters (4.5%) that elect to file suit leap the queues and essentially "move to the head of the line" to have their requests processed, even though many of the requests awaiting processing in FIFO order predate the litigated request. Coupled with the high volume of FOIPA requests, the amount of unaddressed work, and the Department's backlog reduction mandate, in July 2024, the FBI (i) readjusted its administrative queue structure to focus its finite resources where most requests reside and (ii) revised its IRP from 500 to 250 pages reviewed per month.

**PART III: QUEUE STRUCTURE AND INTERIM RELEASE POLICY**

15.     *Implementation of Multi-Track Processing Queues:* First, the FOIA as implemented in the Department of Justice by 28 C.F.R. § 16.5(b) encourages components to develop multi-track processing with the goal of responding to more requests. Consistent with this sound business practice and the program goal stated above, effective April 2024, the FBI restructured its processing tracks or "queues" by adding the extra-small queue to its existing four processing queues as the majority of requests program-wide range from 1 to 250 pages. As such,

the additional processing queue allows for timely and efficient closure of many requests with lower page counts. The FBI now has five processing queues where requests await assignment to an analyst for processing:

| Queue | Page Counts |
|---|---|
| Extra Small | 0-50 |
| Small | 51-250 |
| Medium | 251-500 |
| Large | 501-4,999 |
| Extra Large | More than 5,000 |

16.    Within each queue, as noted above, requests are processed in FIFO order. Under this revised queue structure, those requests seeking large numbers of pages (assigned to the large and extra-large queues) comprise a disproportionate percentage of the total number of pages pending review by the FBI. Approximately 90% of the 7.15 million pages pending assignment in for processing in the "backlog" at the end of FY 2025 resided in the Large and Extra-Large queues; however, they were responsive to only 20% of all pending requests in the backlog. Conversely, only 10% of pages pending assignment in the extra-small, small and medium queues of the backlog were compiled in response to approximately 80% of all pending requests in the backlog. Relative to the number of requests, large and extra-large queue requests only account for 20% of all pending requests, while the majority of pending requests at 80% reside in the extra-small, small and medium queues.

| Backlog Queues (Processing Work Awaiting Assignment) | Requests Awaiting Assignment | Pages Awaiting Assignment |
|---|---|---|
| Extra Small, Small, and Medium Queues | 5001 (80%) | 702,167 (10%) |
| Large and Extra-Large Queues | 1262 (20%) | 6,453,254 (90%) |
| Total Pending Assignment as of 9/30/2025 | 6263 (100%) | 7,151,233 (100%) |

17.    By making interim releases in increments of 250 reviewed pages or less per

month, the FBI is attempting to provide pages to more requesters more frequently across all five queues rather than allowing the relative few large queue requests and litigants to monopolize an unbalanced share of FOIPA program time and processing resources, resulting in a system where less pages are provided to fewer requesters on a more infrequent basis.

18.    *Interim Release Policy Basis:* To more equitably serve the requesting public at large, the FBI constantly balances competing demands to ensure the best use of its finite time and resources. To strike this balance, agencies have long been encouraged by the Department of Justice Office of Information Policy (OIP) to employ interim releases as a best practice.[5] In fact, in 2010, the FBI began interim releases at a rate of 500 pages per month per request. For context, in 2011, the FBI had 2,045 pending FOIPA requests and 2.3 million pending pages of unaddressed work. While the efficacy of the FBI's IRP has been recognized by the Courts,[6] the FBI's FOIPA workload has more than quintupled from FY 11 to date.[7] As a result, and consistent with the revised queue size discussed above, on July 1, 2024, the FBI instituted a policy of reviewing and processing records in 250-page increments per month per request—including requests in litigation—to equitably distribute its limited resources to as many requesters as possible.[8] The rationale for the FBI's revised interim release policy (IRP) of 250

---

[5] DOJ-OIP Program Guidance, "Suggested Best Practices for Improving Transparency," posted September 2010. *See* https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/best-practices-guidance-sept-2010.pdf. (last accessed August 28, 2024.)

[6] *See Nat'l Sec. Counselors v. Dep't of Justice*, 848 F.3d 467 (D.C. Cir. 2017) and *White v. FBI*, Civ. A. No. 20-1798, 2021 WL 1118087 (7th Cir. Mar. 24, 2021).

[7] For comparison, at the end of FY 2011 the FBI had approximately 2,045 pending requests. At the end of FY 2015, that number had more than doubled at 4,829 requests. The FBI concluded FY 2020 with over 10,000 pending requests, double the number pending five years prior. At the end of FY 2025, despite the FBI's best efforts to counter the rising number of incoming FOIPA requests, there were over 11,000 pending requests.

[8] When a court issues an order requiring the FBI to process at a rate higher than 250 pages reviewed per month, the FBI has no option but to comply by diverting resources from other

pages reviewed per month is three-fold: maximize release consistency; conduct required pre-release information security reviews; and promote public trust through program stewardship.

19.      *Release Consistency:* First, by working in 250-page increments, the policy promotes release consistency by streamlining the FOIPA release workflow. The FBI processes responsive records in monthly increments of 250 pages, meaning 250 pages are reviewed, consulted as necessary, and processed. Next, required security protocols are run to move releasable records from the FBI's Secret enclave—where FOIPA processing occurs—to the Unclassified enclave for public release. Thereafter, monthly processing continues for the next 250 pages until all responsive pages to the request are released. The complexity of information within FBI records drives the management of an efficient, predictable release workflow. In addition to classified information, which adds a declassification step to the FOIPA review process, FBI records are replete with a variety of law enforcement sensitive and national security information equities requiring coordination and review by internal subject matter experts across the FBI, other DOJ components, and/or other government agencies. As a result, the FBI has determined that reviewing 250-pages per month is "the right size" increment to ensure a timely, consistent workflow. In this regard, maintaining a steady interim release posture is key to maximizing the release of FBI information to the most requesters in the FBI's high-volume, complex request environment. As such, processing at higher monthly rates of production delays the processing of requests for other requesters, including requests that predate Plaintiff's request.

20.      *Information Security Reviews:* Second, once the review, processing and complexity-driven coordination tasks noted above are completed, FBI records undergo

---

requesters in order to meet the court ordered processing rate. However, absent a court order, the FBI processes administrative and litigation requests at the standard rate of 250 pages reviewed per month.

information security reviews prior to public release. Many FBI records contain classified information, requiring FBI FOIPA requests to be processed on a classified network. In fact, Sentinel, the FBI's case management system that is regularly searched in response to FOIPA requests, resides on the Secret enclave. Thus, when information is prepared for release after review, processing and consultation, it undergoes a multi-step information security review process. Specifically, the FBI employs internal, pre-release security scans that must be performed every time information is taken from the classified enclave and proposed for release to a FOIPA requester in an unclassified format. To accomplish this review, the FBI performs extensive, pre-release security scans of all information proposed for release to ensure classified information and/or highly sensitive law enforcement, national security, confidential source, and individual privacy information is not inadvertently released. As this security review requirement applies to every release, it underscores the 250 page per month increment as a component of ensuring a timely, consistent workflow to efficiently serve more requesters.

21.    *Stewardship:* Third, the IRP is designed to provide a steady flow of information to the public by providing FBI information to more requesters more frequently. Without equitable resource management focused on serving most requesters on a consistent basis, a distinct minority of requesters who seek a disproportionate number of pending pages (large and extra-large queue requests) would dominate the FBI's finite time and resources. To prevent such an inverted system, the FBI must be a responsible steward of its program resources. As such, working in 250-page increments promotes stewardship in three respects: First, it ensures the FBI can provide information in response to the majority of administrative FOIPA requests, by focusing on requests within the extra small, small and medium tracks—where 80% of requests reside—versus producing the most pages to fewer requesters, while keeping pace with the high-

volume of releases to litigants.

22.    Second, in terms of workflow efficiency, the 250-page incremental size enables a manageable monthly production rate because it allows for the processing of records by a GIS, quality assurance and subject matter expert reviews, stakeholder consultations, and the required pre-release FBI information security reviews. Third, the incremental size allows more requesters to receive information on a regular basis, rather than waiting until all pages responsive to their request are processed before receiving any responsive material at all.

23.    All of the above factors together underpin the FBI's IRP, designed to equitably provide the most information possible to the largest number of requesters. Altering the IRP to provide more information to requesters who litigate at a higher rate than those requesters waiting in FIFO order within the administrative queues creates a program imbalance. In this instance, processing at 500 pages per month allows Plaintiff to consume a larger share of the FBI's finite time and FOIPA resources, shifting them away from other requesters, including many requests not in litigation that predate Plaintiff's request. The same GISs processing records to comply with the high-volume of litigation production mandates are the same personnel working on administrative FOIPA requests, consults/referrals, and appeals. Thus, increasing the production rate for Plaintiff's request will result in a less equitable distribution of the FBI's finite processing resources relative to all other requesters. Simply put, departing from the FBI's IRP to produce more records for Plaintiff will extend the response times for all other smaller requesters and result in fewer requesters receiving records each month.[9] Plaintiff's proposed processing rate of 500 pages per month is double the IRP rate and creates the additional risk of causing workflow

---

[9] Processing Plaintiff's request at the rate of 500 pages per month would consume the FBI's resources that would otherwise be used to process monthly releases for Plaintiff and one other requester at its standard rate of 250 pages per month.

bottlenecks, further impacting the ability to timely respond to other requests. Thus, without a compelling need to provide the records in an expedited fashion, as defined by 5 U.S.C. §§ 522(6)(E)(v)(I) and (II), such treatment of Plaintiff's request is unwarranted.

**CONCLUSION**

24.     The FBI takes its FOIPA responsibilities seriously and strives to promote public trust through responsive, efficient program administration. All reasonable efforts are being made to timely process both administrative and litigation requests, including Plaintiff's. The FBI has carefully considered the volume of responsive records along with Plaintiff's interests, while also recognizing the right of access for other litigants and administrative requesters to timely receive the information they seek. Given the high-volume and complexity of FBI FOIPA requests in a heavy litigation environment where 54% of processing resources are dedicated to litigation, which represents only 4.5% of all program cases—maintaining the IRP processing rate in this case is of vital significance. The IRP production rate will allow the FBI the time necessary to process and release all non-exempt records responsive to Plaintiff's request. Altering the IRP to suit the individual needs of this Plaintiff, or any of the thousands of other requesters seeking information from the FBI, disrupts the FBI's ability to process FOIPA requests in a manner that is most beneficial to requesters as a whole. Accordingly, the FBI respectfully requests a production rate of 250 pages reviewed per month.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

SHANNON HAMMER
Digitally signed by SHANNON HAMMER
Date: 2026.06.22 17:01:42 -04'00'

Shannon R. Hammer
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

14